UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PETER J. FARRELL,<br><br>　　　　　Petitioner,<br><br>　　v.<br><br>DIRECTOR OF CDCR,<br><br>　　　　　Respondents. | No. 2:12-cv-00818 AC P<br><br><br><br>ORDER |

Petitioner is a state prisoner proceeding pro se with an amended application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He challenges his 2010 felony convictions for driving under the influence of alcohol and driving with a blood-alcohol level of 0.08 percent or higher, both while having sustained a prior conviction for vehicular manslaughter while intoxicated. ECF No. 5. The parties have consented to the jurisdiction of the magistrate judge. ECF Nos. 4, 25. Respondent has answered, ECF No. 26, and petitioner has filed a reply, ECF No. 28. For the reasons that follow, the petition will be denied on the merits without an evidentiary hearing.

**I.  LEGAL AND FACTUAL BACKGROUND**

Petitioner was pulled over by California Highway Patrol Officer Greg Moser during the early morning hours of July 11, 2009 for weaving onto the right shoulder of the road and for

1

1  driving approximately 20-25 miles per hour in a 55-mile-per-hour zone.  R.T. 22-23, 26.[1]  During
2  the traffic stop, Officer Moser noticed that petitioner's eyes were red and watery, his speech was
3  slurred, and the interior of the vehicle smelled strongly of alcohol.  R.T. 29.  The officer also
4  observed that petitioner's forehead, face, and clothing had dried blood.  R.T. 29-30.  In response
5  to questioning about the dried blood, petitioner reported having been in a fight with a security
6  guard at Thunder Valley Casino.  R.T. 30.  When asked if he had been drinking, petitioner
7  initially denied it, but then told the officer that he had one beer.  R.T. 30.

8  Once a second highway patrol officer arrived on scene, petitioner was asked to get out of
9  his car and to perform several field sobriety tests.  R.T. 40-48.  As petitioner walked over towards
10 the sidewalk he was "sway[ing] a little bit" and was "kind of unsteady on his feet…."  R.T. 41.
11 Petitioner was arrested for driving under the influence and driving with a blood-alcohol content of
12 0.08 percent or more after two preliminary breath tests indicated that petitioner had a blood
13 alcohol content of 0.23 and 0.21 percent respectively.  R.T. 48-49.  After being transported to the
14 county jail, petitioner refused to provide either a breath or blood sample.  R.T. 50-51.  As a
15 result, a nonconsensual blood sample was taken at 4:00 a.m. which showed a blood alcohol
16 concentration of 0.22 percent.  R.T. 51, 65.

17 At trial, petitioner testified that he had been drinking for three to four hours at Thunder
18 Valley Casino prior to being pulled over.  R.T. 88.  When he left the casino to get his credit card
19 and wallet from his car, he was approached by another man who asked him for a few dollars.
20 R.T. 89-90.  After petitioner gave the man a few dollars, he was punched in the face and asked for
21 all of his money.  R.T. 90.  A fight between the two men ensued.  R.T. 90-91.  At the end of the
22 fight, petitioner got into his car and locked the door only to be confronted once again by the same
23 man, who began to bang on his window and threaten him.  R.T. 91.  Petitioner decided to drive
24 his car towards the casino.  As he did so, his car was struck by a pickup truck driven by the man
25 who had assaulted him.  R.T. 91-92.  The pickup truck driver got out and proceeded to berate
26 petitioner while holding something in his hands which petitioner thought was a pipe.  R.T. 92.  In

---

[1] "R.T." refers to the one volume of Reporter's Transcript filed by the respondent.  See Lodged Doc. 2.

order to escape the situation, petitioner drove towards the freeway. R.T. 93. Petitioner testified that the pickup truck driver was still pursuing him on the highway so he decided to make a U-turn and drive back towards the casino in order to contact security. R.T. 93-94. When asked why he did not report this incident to the highway patrol officer after he was pulled over, petitioner testified that he was "very traumatized and nervous, confused, and … under the influence of alcohol." R.T. 95.

The jury convicted petitioner on all counts. C.T. 84-86.[2] Following a bifurcated proceeding, the trial court found petitioner's prison prior allegation to be not true. R.T. 185. After further argument and evidence, the trial court found that petitioner's prior conviction for vehicular manslaughter without gross negligence was true and constituted a strike within the meaning of California Penal Code § 667 and 1192.7. R.T. 206. Petitioner was sentenced to the upper term of three years which was then doubled to six years based on his prior strike conviction. C.T. 133-135. The sentence on count two was stayed. Id.

Petitioner's counsel on appeal filed a Wende[3] brief with the California Court of Appeal indicating that there were no colorable legal issues to raise. See Lodged Doc. 3. As a result, petitioner filed a pro se supplemental brief in the California Court of Appeal raising the same claims that are presented in the instant amended federal habeas petition. See Lodged Doc. 4. The California Court of Appeal affirmed petitioner's convictions and the California Supreme Court denied discretionary review. See Lodged Doc. 5. Petitioner then filed a series of state habeas corpus petitions in the Placer County and Sacramento County Superior Courts, all of which were denied. See Lodged Docs. 6-8. Following the denial of state habeas relief, petitioner filed the instant federal habeas corpus petition, which he then amended on May 5, 2012. ECF No. 1, 5. Petitioner's first amended petition for writ of habeas corpus, ECF No. 5, is the operative pleading

---

[2] "C.T." refers to the one volume of Clerk's Transcript filed by the respondent. See Lodged Doc. 1.

[3] People v. Wende, 25 Cal.3d 436 (1979) (approving of the practice whereby appointed counsel files an appellate brief setting forth a summary of the proceedings as well as the facts of the case and requests the court to independently review the record because there are no arguable legal issues to raise).

before this court.

## II.  MOTION TO PROCURE THE RECORD

Also pending before this court is petitioner's fifth "motion to procure the record." ECF No. 29; see also ECF Nos. 3, 10, 13, 19. In this motion, petitioner requests a copy of the original letter that was sent by the Placer County District Attorney's Office requesting his 1988 prior conviction from the Sacramento County Superior Court. ECF No. 29 at 1. Petitioner asserts that the letter was sent "sometime in December 2009" and is "crucial in proving the merit on Ground Two in the petitioner's writ at issue." Id. Respondent opposes the motion, ECF No. 30, arguing that such a discovery request is barred by 28 U.S.C. § 2254(d) and that this court's reasonableness review is limited to the state of the record as it existed at the time of the last reasoned state court opinion in petitioner's case. ECF No. 30 at 2-3.

The court will deny petitioner's motion. While Respondent correctly cites recent Supreme Court and Ninth Circuit jurisprudence emphasizing the retrospective analysis that a federal court is required to conduct on habeas review, the court denies the motion because there is no evidentiary gap in the present case that needs filled with the evidence cited by petitioner. See Cullen v. Pinholster, 131 S. Ct. 1388 (2011); Runningeagle v. Ryan, 686 F.3d 758, 773-74 (9th Cir. 2012). There is no dispute in the present case that the Placer County District Attorney did not request this evidence, much less turn it over in discovery, prior to petitioner's trial. See R.T. 201-204. Therefore, the date upon which the request was made is not relevant to this court's analysis, nor is the actual content of the communication because it is undisputed. Because Claim Two can be adjudicated without reference to any additional evidence beyond the state court record, the motion will be denied.

## III.  STANDARDS GOVERNING HABEAS RELIEF UNDER THE AEDPA

28 U.S.C. § 2254, as amended by the AEDPA, provides in relevant part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as

determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A state court decision is "contrary to" clearly established federal law if the decision "contradicts the governing law set forth in [the Supreme Court's] cases." Williams v. Taylor, 529 U.S. 362, 405 (2000). A state court decision "unreasonably applies" federal law "if the state court identifies the correct rule from [the Supreme Court's] cases but unreasonably applies it to the facts of the particular state prisoner's case." Williams, 529 U.S. at 407–08. It is not enough that the state court was incorrect in the view of the federal habeas court; the state court decision must be objectively unreasonable. Wiggins v. Smith, 539 U.S. 510, 520–21 (2003). State court decisions can be objectively unreasonable when they interpret Supreme Court precedent too restrictively, when they fail to give appropriate consideration and weight to the full body of available evidence, and when they proceed on the basis of factual error. See, e.g., Williams, 529 U.S. at 397–98; Wiggins, 539 U.S. at 526–28 & 534; Rompilla v. Beard, 545 U.S. 374, 388–909 (2005); Porter v. McCollum, 558 U.S. 30, 42 (2009).

The "unreasonable application" clause permits habeas relief based on the application of a governing principle to a set of facts different from those of the case in which the principle was announced. Lockyer, 538 U.S. at 76. AEDPA does not require a nearly identical fact pattern before a legal rule must be applied. Panetti v. Quarterman, 551 U.S. 930, 953 (2007). Even a general standard may be applied in an unreasonable manner. Id. In such cases, AEDPA deference does not apply to the federal court's adjudication of the claim. Id. at 948. The phrase "clearly established Federal law" in § 2254(d)(1) refers to the "governing legal principle or principles" previously articulated by the Supreme Court. Lockyer v. Andrade, 538 U.S. 63, 71–72 (2003). Clearly established federal law also includes "the legal principles and standards flowing from precedent." Bradley v. Duncan, 315 F.3d 1091, 1101 (9th Cir.2002) (quoting Taylor v. Withrow, 288 F.3d 846, 852 (6th Cir.2002)). Only Supreme Court precedent may constitute "clearly established Federal law," but circuit law has persuasive value regarding what law is "clearly established" and what constitutes "unreasonable application" of that law.

Duchaime v. Ducharme, 200 F.3d 597, 600 (9th Cir.2000).

While not at issue in the present case, relief is also available under AEDPA where the state court predicates its adjudication of a claim on an unreasonable factual determination. 28 U.S.C. § 2254(d)(2). The statute explicitly limits this inquiry to the evidence that was before the state court. Even factual determinations that are generally accorded heightened deference, such as credibility findings, are subject to scrutiny for objective reasonableness under § 2254(d)(2). See, e.g., Miller–El v. Dretke, 545 U.S. 231, 240 (2005) (rejecting credibility finding as unreasonable in light of the evidence before the state court).

Section 2254(d) constitutes a "constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus." Williams, 529 U.S. at 412. To prevail, therefore, a habeas petitioner must establish the applicability of one of the § 2254(d) exceptions and also must also affirmatively establish the constitutional invalidity of his custody under pre-AEDPA standards. Frantz v. Hazey, 533 F.3d 724 (9th Cir.2008) (en banc). There is no single prescribed order in which these two inquiries must be conducted. Id. at 736–37. The AEDPA does not require the federal habeas court to adopt any one methodology. Lockyer v. Andrade, 538 U.S. 63, 71(2003).

**IV.    PETITIONER'S CLAIMS FOR RELIEF**

At the outset, it bears emphasizing that habeas relief is only warranted for violations of the federal constitution, laws or treaties. See 28 U.S.C. § 2254(a). A writ of habeas corpus is available under 28 U.S.C. § 2254(a) only on the basis of some transgression of federal law binding on the state courts. Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985); Gutierrez v. Griggs, 695 F.2d 1195, 1197 (9th Cir. 1983). It is unavailable for alleged error in the interpretation or application of state law. Middleton, 768 F.2d at 1085; see also Lincoln v. Sunn, 807 F.2d 805, 814 (9th Cir. 1987); Givens v. Housewright, 786 F.2d 1378, 1381 (9th Cir. 1986); Cooper v. Brown, 510 F.3d 870, 1001(9th Cir. 2007) (stating that "it is not the policy of the federal courts to re-examine state court determinations of state law questions."). Moreover, habeas corpus cannot be utilized to try state issues de novo. Milton v. Wainwright, 407 U.S. 371, 377, 92 S. Ct. 2174, 2178 (1972). Habeas relief does not lie for mere errors of state law or

1    procedure that do not rise to the level of a constitutional violation.  Pulley v. Harris, 465 U.S. 37,

2    41 (1984).  The majority of petitioner's claims fail for this reason alone.

### A. Claim One

In his first claim for relief petitioner alleges that he "was denied due process of the law sunder [sic] State Law 1054.7 of the California Penal Code, also Federal Law 840.2 warranting sanctions within California Criminal Procedure 2023(b)."  Although the claim is not a model of clarity, it appears that petitioner is alleging prosecutorial misconduct based on the violation of state discovery rules, namely California Penal Code § 1054.7.  Petitioner argues that the prosecutor abused the discovery process by untimely submitting a copy of the plea transcript related to petitioner's prior conviction "to gain [a] tactical advantage at the penalty phase and [this] warrants sanctions and preclusion of evidence."  ECF No. 5 at 4.  As a remedy, petitioner asks this court to strike his prior conviction and modify his sentence accordingly.  Id. at 13.

As alleged in the amended federal petition, this claim is not cognizable on habeas because it is based solely on a breach of state discovery rules.  Liberally construing this claim based on petitioner's pro se status, it appears that he is attempting to argue that the prosecutor committed a Brady[4] violation by failing to turn over the plea transcript in a timely fashion.  See Haines v. Kerner, 404 U.S. 519, 520 (1972).  Construed as such, the claim is unexhausted because petitioner only presented this as a state law claim on direct appeal.  See Lodged Doc. 4.  While petitioner did file various state habeas petitions in the Placer County and Sacramento Superior Courts, any federal claims raised therein are unexhausted because they were not also presented to the California Supreme Court.  A petitioner satisfies the exhaustion requirement by providing the highest state court with a full and fair opportunity to consider all claims before presenting them to the federal court.  O'Sullivan v. Boerckel, 526 U.S. 838, 839  (1999).

Despite this lack of exhaustion, the court will deny relief on the merits of the claim.  See 28 U.S.C. § 2254(b)(2) (stating that a claim "may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State").  The Ninth

---

[4] Presumably, petitioner is referring to Brady v. Maryland, 373 U.S. 83 (1963).

7

1   Circuit Court of Appeals has stated that a district court "may deny an unexhausted claim on the
2   merits ... when it is perfectly clear that the applicant does not raise even a colorable federal
3   claim." Cassett v. Stewart, 406 F.3d 614, 623–24 (9th Cir.2005).  District courts retain the
4   discretion to determine a petition on its merits, bypassing an asserted procedural issue, where the
5   underlying claims are "clearly not meritorious."  See Lambrix v. Singletary, 520 U.S. 518, 525,
6   (1997); see also Day v. McDonough, 547 U.S. 198, 208–09 (2006) (district courts can exercise
7   discretion in each case to decide whether the administration of justice is better served by
8   dismissing the case on statute of limitations grounds or by reaching the merits of the petition);
9   Granberry v. Greer, 481 U.S. 129, 135 (1987) (discussing ability of district court to bypass
10  exhaustion determination where the petitioner does not raise a colorable federal claim).
11          AEDPA deference does not apply to a review of this claim on the merits because there is
12  no reasoned state court opinion to which to defer.  When the state court has not decided an issue,
13  review of such a claim is de novo.  See Reynoso v. Giurbino, 462 F.3d 1099, 1109 (9th Cir.
14  2006).  However, even under a de novo standard of review, this claim fails on the merits because
15  the evidence that was not timely produced was neither exculpatory nor impeaching.  A true Brady
16  violation consists of three components: "[t]he evidence at issue must be favorable to the accused,
17  either because it is exculpatory, or because it is impeaching; that evidence must have been
18  suppressed by the State, either willfully or inadvertently; and prejudice must have ensued."
19  Strickler v. Greene, 527 U.S. 263, 281–82 (1999).  Even petitioner concedes that the plea
20  transcript of petitioner's prior conviction was prejudicial rather than favorable.  See ECF No. 5 at
21  6. In fact, when the prior conviction was disclosed and then admitted into evidence at the bench
22  trial on petitioner's prior conviction, defense counsel argued that since the documents "articulate
23  a fair amount about his past conduct… they would… have been reviewed with [petitioner] and
24  discussed prior to coming to trial and whether he should or should not go to trial, and it could
25  have resulted in a different result whether we would have gone into negotiation for settlement on
26  this case…."  R.T. 203.  For this reason, the Brady claim fails on the merits.
27          **B.     Claim Two**
28          Next petitioner challenges the "[f]ailure by the trial court to prove the prior [conviction]

8

beyond a reasonable doubt and contrary to the legal principles set forth in – <u>Yurko</u> (1974) 10 Cal.3d 857, 862." Here petitioner appears to argue that the Placer County Superior Court did not have sufficient evidence before it to deem his prior conviction a strike. He submits evidence in the form of a Certificate of Search for the death record of Donald Hulsey from 1980 through 1995 in Sacramento County that produced no results. <u>See</u> ECF No. 28 at 23. Petitioner then relies on this document to dispute the sufficiency of the evidence supporting his conviction for the vehicular manslaughter of Gerald Hulsey.

To the extent that petitioner relies on <u>In re Yurko</u> to challenge the procedures utilized by the trial court in finding his prior conviction to be true, this is a state law claim that is not cognizable on habeas. Liberally construing it as a sufficiency challenge to his prior conviction, the claim is unexhausted due to the failure to alert the state court of the federal nature of the claim. <u>See</u> <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 844-45 (1999). Nowhere in petitioner's supplemental brief before the California Court of Appeal did petitioner rely on the Fourteenth Amendment's due process clause or any other federal law describing the constitutional nature of this claim. <u>See</u> Lodged Doc. 4. Mere recitation of the words "beyond a reasonable doubt" is not enough to alert the state court to the "operative facts and the federal legal theory on which his claim is based." <u>See</u> <u>Kelly v. Small</u>, 315 F.3d 1063, 1066 (9th Cir. 2003), <u>overruled on other grounds by</u> <u>Robbins v. Carey</u>, 481 F.3d 1143 (9th Cir. 2007). "[T]he petitioner must have either referenced specific provisions of the federal constitution or cited to federal or state cases involving the legal standard for a federal constitutional violation." <u>Castillo v. McFadden</u>, 399 F.3d 993, 999 (9th Cir. 2005). The only citation to <u>Jackson v. Virginia</u>, 443 U.S. 307 (1979), the relevant federal case dealing with sufficiency of the evidence, comes in petitioner's reply brief filed in this court. ECF No. 28 at 4. Since exhaustion is determined by the pleadings filed in state court, this discovery by petitioner of the federal authority to support his claim comes way too late. <u>See</u> <u>Duncan v. Henry</u>, 513 U.S. 364, 365-66 (1995) (per curiam).

Despite the lack of exhaustion, the court will deny relief on the merits because this claim is plainly meritless. <u>See</u> 28 U.S.C. § 2254(b)(2); <u>Rhines v. Weber</u>, 544 U.S. 269 (2005) (holding in a noncapital habeas case that the district court would abuse its discretion if it were to grant a

9

1  stay when the unexhausted claims are plainly meritless); see also Clark v. Ricketts, 958 F.2d 851

2  (9th Cir. 1992). Petitioner's argument that there is insufficient evidence of his prior conviction

3  because there is no death record in Sacramento County for an individual by the name of Donald

4  Hulsey is a red herring. The record demonstrates that the victim involved in petitioner's prior

5  conviction was named Gerald Hulsey. See C.T. 147-150 (information charging petitioner with

6  "unlawfully and feloniously, while driving a vehicle, kill[ing] a human being, to wit, Gerald

7  Hulsey."). While the victim's name may have been mispronounced and therefore misspelled in

8  the reporter's transcript upon which petitioner could have relied when conducting his search of

9  death records, the charging document to which defendant pleaded guilty identified the victim as a

10  Gerald Hulsey. Compare R.T. 205 with C.T. 147-150. Therefore, applying Jackson v. Virginia,

11  443 U.S. 307 (1979), the undersigned finds that a rational juror would have found sufficient

12  evidence of petitioner's prior conviction beyond a reasonable doubt.

13  **C.  Claim Three**

14  Here petitioner claims that the "trial court was arbitrary and not guided by applicable legal

15  fundamentals in citing an unpublished case as an authority for a legal point. Published cases are

16  binding legal authority. California Rules of Court, Rule 8.1115." This claim is not cognizable on

17  federal habeas. A state court's citation to an unpublished decision does not rise to the level of a

18  constitutional violation. See 28 U.S.C. § 2254(a). Therefore, the claim will be denied.

19  **D.  Claim Four**

20  In his last claim for relief, petitioner asserts that the trial court violated the prohibition

21  against the dual use of facts by (1) elevating a misdemeanor DUI to a felony, (2) imposing the

22  upper term, and then (3) doubling it under the three strikes law, all based on his 1988 prior

23  conviction. Once again, petitioner raises only a state law claim which is not cognizable on

24  habeas. As stated earlier, federal habeas does not lie for claims of state law sentencing error. See

25  Windham v. Merkle, 163 F.3d 1092 (9th Cir. 1998). Absent a showing of fundamental

26  unfairness, a state court's misapplication of its own sentencing law does not support habeas relief.

27  Christian v. Rhode, 41 F.3d 461, 469 (9th Cir. 1994); see also Miller v. Vasquez, 868 F.2d 1116

28  (9th Cir. 1989) (declining to examine state court's determination that petitioner's prior conviction

1   was for a "serious felony" for purposes of state sentencing regime).  Federal courts are "bound by
2   a state court's construction of its own penal statutes," Aponte v. Gomez, 993 F.2d 705, 707 (9th
3   Cir.1993), and this court must defer to the California courts' application of the three strikes law
4   unless that interpretation is "untenable or amounts to a subterfuge to avoid federal habeas review
5   of a constitutional violation." Oxborrow v. Eikenberry, 877 F.2d 1395, 1399 (9th Cir.), cert.
6   denied, 493 U.S. 942 (1989).  Here there is no allegation that the state court's application of the
7   three strikes law was completely untenable or done to avoid federal review of petitioner's
8   sentence.  For that reason, the claim will be denied.

### E.  Additional Claims Raised in Petitioner's Reply

In his reply, ECF No. 28, petitioner appears to expand his § 2254 claims by re-aligning them with his supplemental opening brief filed on direct appeal with the California Court of Appeal.  See Lodged Doc. 4.  This is due, at least in part, to the respondent's answer which addresses claims raised on direct appeal, but not presented in the amended § 2254 petition.  See ECF No. 26 at 9-10.  While petitioner's briefs are not a model of clarity, nowhere in the amended habeas petition did petitioner ever use the words "ex post facto."  See ECF No. 5.  This court will construe petitioner's reply as a request for leave to amend his 2254 petition.  Because all the claims raised on direct appeal have now been fully briefed by the parties, the court will grant petitioner leave to amend and review the supplemental ex post facto claim presented in the reply.[5]

On direct appeal, petitioner alleged that using his prior vehicular manslaughter conviction to increase his punishment for the current offense violated the proscription against ex post facto laws in both the state and federal constitution.  See Lodged Doc. 4, at 3.  The California Court of Appeal rejected petitioner's ex post facto challenge by stating that "use of a prior conviction suffered before the effective date of the three strikes law as a prior strike does not violate the

---

[5] While the timeliness of the amended claim has not been briefed, the court will opt to reach the merits and bypass any timeliness bar for two reasons: first and foremost, based on judicial economy, and, secondly, because of petitioner's impending release date from custody.  See Mayle v. Felix, 545 U.S. 644 (2005) (holding that "[a]n amended habeas petition… does not relate back (and thereby escape AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth"); see also ECF No. 32 at 1 (indicating that petitioner has four months remaining on his term of imprisonment).

11

1   prohibition in either the California or United States Constitution….” See ECF No. 26, at 16

2   (Exhibit A: People v. Farrell, 2011 WL 776133 (Cal. App. 2010) (unpub.)).

3         The United States Constitution prohibits the federal government and the states from passing any "ex post facto Law." U.S. Const., Art. I, § 9, cl. 3 (federal government); Art. I, § 10, cl. 1 (states). These clauses prohibit the government from retroactively altering the definition of a crime or increasing the punishment for criminal acts. California Department of Corrections v. Morales, 514 U.S. 499, 504–05 (1995). However, a recidivism statute like California's three strikes law does not increase the punishment for past crimes, but rather for the current offense. See McDonald v. Commonwealth of Massachusetts, 180 U.S. 311 (1901). Thus, the ex post facto clause is not violated when a trial court enhances a defendant's sentence on a current offense based upon a prior conviction, even a conviction suffered before the effective date of the enhancement statute. See Parke v. Raley, 506 U.S. 20, 27 (1992); United States v. Kaluna, 192 F.3d 1188, 1199 (9th Cir.1999), cert. denied, 529 U.S. 1056 (2000). "For purposes of analyzing repeat offender statutes and statutes increasing penalties for future crimes based on past crimes, the relevant 'offense' is the current crime, not the predicate crime." United States v. Arzate-Nunez, 18 F.3d 730, 734 (9th Cir. 1994). Here, petitioner committed his current offenses in 2009, well after the three strikes law was enacted. Therefore, the state court's rejection of petitioner's ex post facto claim was neither contrary to, or an unreasonable application of, clearly established federal law as set forth by the United States Supreme Court. 28 U.S.C. § 2254(d)(1). Accordingly, petitioner is not entitled to habeas relief on this claim.

      **V.**      **CERTIFICATE OF APPEALABILITY**

      Pursuant to Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, "[t]he district court must issue or a deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11, 28 U.S.C. foll. § 2254. A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The court must either issue a certificate of appealability indicating which issues satisfy the required showing or must state the reasons why such a certificate should not issue. Fed. R. App. P. 22(b). For the reasons

set forth herein, petitioner has not made a substantial showing of the denial of a constitutional right.  Therefore, no certificate of appealability should issue.

Accordingly, IT IS HEREBY ORDERED that:

    1. Petitioner's motion to procure the record is denied;

    2. The petition for writ of habeas corpus is denied; and

    3. This court declines to issue a certificate of appealability.

DATED: November 13, 2013

                                            /s/ Allison Claire
                                            ALLISON CLAIRE
                                            UNITED STATES MAGISTRATE JUDGE